

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

DMP:ICR/AFM/KCB
F. #2018R01047

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

July 29, 2021

By ECF

The Honorable Denis R. Hurley
United States District Court
Eastern District of New York
100 Federal Plaza
Central Islip, New York 11722

      Re:   United States v. Jack Cabasso
             Docket No. 19-CR-582 (DRH) (ARL)

Dear Judge Hurley:

      The government respectfully submits this letter brief in opposition to defendant Jack Cabasso's July 8, 2021 motion to modify the conditions of his pretrial release (the "Motion" or "Mot.," Dkt. No. 199), and as a cross-motion to return the defendant to home confinement and revoke his permission to communicate with Aventura's former customers and employees.

      The defendant is currently under home confinement but is permitted to travel to Aventura's offices and communicate with former work contacts, as described in more detail below. As a condition of permitting the defendant to leave his home and communicate with former work contacts, the Honorable Arlene R. Lindsay ordered the defendant to report his work contacts on a biweekly basis to the government and the Pretrial Services Agency ("Pretrial" or "Pretrial Services"). The defendant has violated that condition, failing to report his ongoing business contacts. He nonetheless now moves for an expansion of his bond conditions, asking that he be permitted to move freely within the Eastern and Southern Districts of New York.

      The defendant devotes most of his brief to attacking the government's case and, gratuitously, the integrity of the prosecutors in this matter. Those attacks are unfounded and irrelevant. Nowhere does the Motion identify a relevant change of circumstance or otherwise offer a reason that the defendant's application should be granted. Rather, the defendant's noncompliance with existing conditions of release means that his application should be denied. Moreover, the defendant's extensive criminal history—including a prior conviction for jury tampering—and the strength of the government's case argue strongly against the requested

relief.  In addition, the defendant's claim that his current bond conditions violate the Due Process Clause is legally and factually unsupported.  Finally, because the defendant has failed to report his contacts as required – which was a condition of Judge Lindsay's decision permitting him to travel to Aventura's offices and communicate with former work contacts – the defendant should be returned to home confinement and barred, once again, from communicating with former associates.

I. Relevant Background

The defendant was charged by complaint on November 6, 2019 with unlawful importation, money laundering conspiracy, and two counts of conspiracy to commit wire and mail fraud, see Dkt No. 1, and was arrested and arraigned on those charges the following day before the Honorable Ramon E. Reyes, Jr.  Judge Reyes ordered the defendant detained pending trial, Dkt. No. 15; see Dkt No. 12 (government's memorandum in support of detention).  The defendant was charged by indictment on December 9, 2019 with the same offenses.  Dkt No. 55.

A. The Defendant Is Released on Bond

In December 2019, defense counsel approached the government to discuss a bail application.  The government consented, subject to strict conditions, including a substantial secured bond and strict limits on the defendant's movement.

On January 6, 2020, with the government's consent, Judge Lindsay ordered the defendant released subject to home detention (with exceptions for medical and attorney visits), and a requirement that he avoid contact with current and former employees and customers of Aventura.  See Dkt. No. 76; Tr. of January 6, 2020 Proceeding (attached hereto as Exhibit A) at 2.

B. The Defendant's Conditions of Release Are Modified

In August 2020, counsel approached the government and Pretrial Services about modifying the defendant's conditions of release so that he could travel from home to his workplace at Aventura's offices, and communicate with Aventura's former customers and employees in connection with a new company he planned to start, operating in the same industry. The government consented with certain conditions, notably that the defendant report his professional contacts on a biweekly basis so that the government and Pretrial Services could verify that the defendant had not resumed the charged fraud.  See Dkt. No. 150 (defense letter proposing agreed conditions to Judge Lindsay).

On September 22, 2020, the parties appeared before Judge Lindsay to discuss the proposed modifications.  See Exhibit B (Transcript of September 22, 2020 Proceeding). Judge Lindsay emphasized the importance of a mechanism to verify that the defendant had not resumed the charged conduct:

2

> I don't have an objection specifically to allowing Mr. Cabasso to set up this business he described but I am concerned since it is a business that's not unlike the one that he is charged with using in violation of the law, that there be some provision for either pretrial services or -- actually, it would have to be pretrial services, to at least randomly check to ensure that the conduct that's charged in the indictment is not being engaged in in the new company.

Exh. B at 3.

Counsel responded by assuring the court that his client would provide regular verification of his business contacts: "I think that the 14-day reporting to the government through pretrial alleviates that concern, Judge, because they will have the opportunity to know who he is dealing with and they'll have the opportunity to contact the clientele and ask what type of business." Id.

Judge Lindsay emphasized "the defendant's responsibility to keep the government apprised of his . . . new business for the company," Exh. B at 4, and then restated for the record the defendant's obligations:

> [T]o the extent that you're going to be operating this new enterprise, [] you have an obligation to keep the government informed in a listing, you could do it through counsel or directly, that will be worked out with you and your lawyer but every 14 days, a comprehensive list of any individuals and persons that you might have contacted as a vendor or client of the new company or any contact with the company which is named in the indictment and the individuals who are associated with that business.
>
> And pretty much to the extent that you're in touch with individuals with respect to the operations of the new business, . . . even if you [are] just contacting them to touch base to see if they need anything, that would be a contact that you would have to report. And then if the government wishes to follow-up on something to inquire further, they would communicate that interest to your attorney who would then provide some response. Does that fairly state what the agreement [is] between the government and defense counsel?
>
> MR. DAYAN: It does on --
>
> MR. RICHARDSON: It does, your Honor.
>
> MR. DAYAN: It does, Judge.

3

On that basis, Judge Lindsay approved the requested modification, adding in her written order that "any contact list provided the Government must contain contact information" for the people contacted by the defendant. Dkt. No. 155.[1]

### C. The Defendant Has Not Complied with the Modified Conditions of Release

Counsel provided a single list of contacts to the government, on November 25, 2020. See Exh. C.[2] Counsel has not provided any further information about the defendant's contacts either to the government or to Pretrial Services. The government nonetheless understands from Pretrial Services that the defendant said as recently as June 2021 that he continues to call potential customers, and affirmed this week that he was still in communication with them. As such, the defendant has failed to comply with the conditions of release imposed by the Court on September 22, 2020.

## II. Legal Standard

Under the Bail Reform Act, 18 U.S.C. § 3141 et seq., a defendant who has been released pending trial may file a motion to amend the conditions of release. 18 U.S.C. § 3145. The Court must impose conditions that will "reasonably assure the appearance of the person as required." 18 U.S.C. § 3142(c)(1). In considering the motion, the Court is guided by the same factors that govern an initial determination to impose conditions of release. See, e.g., United States v. Fishman, No. 20-CR-160 (MKV), 2020 WL 6365353, at *1 (S.D.N.Y. Oct. 29, 2020).

Specifically, as relevant here, the Court must consider the nature and circumstances of the offenses charged, the weight of the evidence against the defendant, and the defendant's personal characteristics and criminal history, including his "character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings." 18 U.S.C. § 3142(g).

---

[1] Judge Lindsay's written order required disclosure to the government alone, but her prior oral discussion with defense counsel touched on both the government and Pretrial, and counsel said that he would report "to the government through Pretrial." See Exh. B at 3.

[2] The government requests that Exhibit C be filed under seal in order to protect the privacy interests of innocent third parties. See United States v. Amodeo, 71 F.3d 1044, 1050 (2d Cir. 1995)

III. Argument

    A. The Defendant's Failure to Comply with His Current Bail Conditions Means That Those Conditions Should Not Be Removed

Courts weighing a request to modify conditions of release routinely consider whether there has been a change of circumstances since the relevant conditions were imposed. See, e.g., United States v. Falcetti, No. 02 CR 140 (ILG), 2002 WL 31921179, at *1 (E.D.N.Y. Oct. 31, 2002) ("Conditions of bail should properly be modified if a substantial change in circumstances as they existed at the time bail was fixed is clearly shown. No such change is shown here and his motion is denied."); United States v. Auletta, No. 86 CR. 245 (MJL), 1988 WL 103365, at *3 (S.D.N.Y. Sept. 28, 1988) (denying release where defendant "neither alleges legal error nor presents any evidence of significant new circumstances bearing on his risk of flight").

A defendant's history of compliance or noncompliance are both relevant considerations. See United States v. Donziger, No. 20-1710-CR, 2021 WL 1165998, at *1–3 (2d Cir. Mar. 29, 2021), as amended (Apr. 26, 2021) (upholding district court's refusal to modify conditions of release where defendant had previously breached terms of home confinement). In this case, the only relevant change since the present conditions were imposed has been the defendant's failure to comply with those conditions. Judge Lindsay released the defendant from home confinement only after defense counsel assured her that the defendant would report his work contacts on a biweekly basis, giving the government and Pretrial Services a mechanism to ensure that the defendant did not resume the charged fraud. The defendant has disobeyed that order, frustrating Pretrial's supervision and demonstrating his lack of regard for the Court's authority. The Court should accordingly revoke the defendant's ability to leave his home and communicate with Aventura's customers and employees, whether current or former, and it should reject the defendant's request to relax his bond conditions further.

    B. The Nature of the Charged Crimes and the Weight of the Evidence Warrant Strict Bail Conditions

The factors set forth in 18 U.S.C. § 3142(g) continue to counsel against modifying the defendant's bond as requested. The defendant's criminal conduct was extremely serious and broad in both temporal and geographic scope. The defendant orchestrated a fraud that grossed more than $88 million and involved co-conspirators both in the United States and overseas, including in the People's Republic of China (the "PRC"). His scheme required near-constant deception – countless material misrepresentations to U.S. military and U.S. government procurement officials, border authorities and private customers about the origins of the goods Aventura sold and who was running the company. The defendant lied with skill and an apparent sense of impunity, always to advance his self-interest and often to the detriment of national security. The seriousness of his criminal conduct weighs in favor of restrictive bond conditions, and the extent of Cabasso's deceit fatally undermines

5

the credibility of any claim that he would comply with his bond conditions and return to court if given freer rein.

In addition, the weight of the evidence against the defendant is overwhelming and includes, among other things, witness accounts, email and other electronic evidence, physical surveillance, financial analysis and physical evidence, as detailed at length in the indictment. Notably, much of the government's evidence against the defendant comes from his own words—touting Aventura products as American-made, while simultaneously sending numerous emails to, among others, PRC manufacturers about the need to hide that Aventura's products were made in the PRC rather than on Long Island.

As courts have observed, "[w]hen the evidence of a defendant's guilt is strong, and when the sentence of imprisonment upon conviction is likely to be strong . . . a defendant has stronger motives to flee." United States v. Bruno, 89 F. Supp. 3d 425, 431 (E.D.N.Y. 2015). Here, in light of the extent and sophistication of the defendant's fraud, the government conservatively estimates that he faces an advisory Guidelines sentencing range of 168 to 210 months' imprisonment for the charged country-of-origin wire fraud scheme alone. See U.S.S.G. § 2B1.1(a)(1), (b)(1)(M), (b)(2)(A)(i), (b)(10)(B), (b)(10)(C).

Notably, despite the length and tone of the defendant's submission, he makes little effort to contest his guilt. The defendant argues primarily that the government has overstated the amount of money that he made by fraudulently selling Chinese-made goods as American-made. See Mot. 3 (contesting dollar value of camera sales and number of employees involved); id. (asserting that "majority" of revenues reflected products assembled in New York); id. at 1, 2, 5 (protesting that Aventura was not "one big fraud"; id. at 4 (contrasting the defendant with his "completely innocent . . . wife"). Of course, these arguments (with which the government strongly disagrees) go only to sentencing, not to the fact of the defendant's guilt. Taken together the strength of the government's evidence, the defendant's uncontroverted guilt, and the likelihood of a significant sentence make him a serious flight risk.

C. The Defendant's Criminal History Counsels Against the Requested Modification

The defendant also has a lengthy criminal history, including numerous crimes involving deceit and efforts to interfere with judicial proceedings. He was convicted in 1992 of conspiring to influence a juror, in violation of 18 U.S.C. § 371. See United States v. Cabasso, et al., No. 92-CR-697 (ADS) (E.D.N.Y.) (the "Tampering Case"). That conviction arose from the defendant's attempt to influence a juror serving in a separate criminal case charging him with another wire fraud scheme. See United States v. Cabasso, et al., No. 91-CR-1234 (ADS) (E.D.N.Y.) (the "Underlying Case"). Specifically, agents learned that one of the defendant's associates (later a codefendant in the Tampering Case) had surveilled the location of one of the jurors empaneled in the Underlying Case. Another of the defendant's associates (who also became his codefendant in the Tampering Case) called that juror repeatedly in order to influence her verdict. The defendant recruited both of these associates to tamper with the juror. Then, on April 21, 1992, using a ruse of a UPS delivery to the juror,

6

the defendant's associates approached the juror and spoke to her about her position as a juror. The juror reported the incident to police because she felt intimidated. Two days later, the jury was unable to return a verdict as to the defendant in the Underlying Case.

The defendant was sentenced principally to 21 months' imprisonment and a three-year term of supervised release for his jury tampering conviction in the 1992 Case. One of the defendant's conditions of supervised release was that he was prohibited from associating with other convicted felons. In 1995, within approximately three months of the completion of his term of imprisonment, the defendant's probation officer saw him at a music concert with a woman who the probation officer subsequently learned was his codefendant in the 1992 Case—one of the coconspirators who had helped the defendant tamper with the jury. When confronted by his probation officer, the defendant lied, claiming the woman was a secretary from his office.

The defendant has also been convicted of several state crimes—all of which involve dishonesty. On April 30, 1982—when the defendant was just 23 years old—he was convicted of two counts of grand larceny in the second degree, in violation of N.Y.P.L. § 155.35(1), for which he was sentenced to 50 days' imprisonment and 58 months' probation. Just a few years later, on December 6, 1985, the defendant was convicted of attempted grand larceny in the second degree, in violation of N.Y.P.L. § 155.35(1), for which he was sentenced to five years' probation. Finally, in March 2000, the defendant was convicted of, among other charges, enterprise corruption, in violation of N.Y.P.L. § 460.20, for his participation in a stock-fraud scheme that reportedly stole $176 million from 16,000 investors. As part of a plea deal, the defendant received a 16-month-to-4-year sentence, and agreed to the forfeiture of approximately $1.5 million that he had secreted in foreign bank accounts.

In addition to the convictions above, in 2011 the defendant was charged in this district with six counts of mail fraud for fraudulently using without permission the credit card of a business associate to pay for a Google advertising campaign that directed traffic to Aventura's website. See United States v. Jack Cabasso, No. 11-CR-493 (SJF) (E.D.N.Y.). The defendant was acquitted of all six counts of mail fraud following a jury trial in 2012.[3]

D. The Defendant's Arguments in Support of Release Are Meritless

The defendant argues that his current bond conditions violate the Due Process Clause. Mot. 1 2, 5. The argument is meritless, because the cases that counsel relies on are irrelevant here. The cases cited in the Motion are about pretrial detention—but the defendant is not detained. See Mot. 1 (citing United States v. Millan, 4 F. 3d 1038 (2d Cir. 1993)).[4]

---

[3] The defendant's claim that this 2011 prosecution involved "all the same evidence that is the basis of the current indictment," Mot. 3, is flatly incorrect. The two cases are unrelated.

[4] Puzzlingly, the Motion refers repeatedly to the defendant's "pretrial detention," Mot. 1, 2, and states that the defendant "has [] been unnecessarily and punitively detained for 20

7

Where a defendant is released on bond, like the defendant here, the framework set out in Millan does not apply. Courts have broad discretion to fashion conditions of pretrial release, as Your Honor is aware from experience, and the government is aware of no case where the Due Process Clause has been applied to bar travel restrictions imposed after judicial consideration and adversarial testing.[5] No such ruling is warranted here. Judge Lindsay reached her decision after careful consideration and upon consultation with the parties. Indeed, the defendant's bail conditions, now challenged as a denial of due process, were *consented to* by the defendant himself less than a year ago. As Judge Glasser observed under similar circumstances:

> As is not infrequently the case, to avoid the possibility that an order of detention will be made, a defendant offers the less restrictive alternative of house arrest, coupled with electronic monitoring and geographic restrictions upon travel. That was the case here and an order imposing those restrictions . . . was made by the Magistrate Judge.
>
> As is also not infrequently the case, sooner or later an application is made to modify those restrictions. No change of circumstance is alleged as is the case here. . . . Conditions of bail should properly be modified if a substantial change in circumstances as they existed at the time bail was fixed is clearly shown. No such change is shown here and his motion is denied.

Falcetti, 2002 WL 31921179, at *1.

Finally, the defendant's claim that the government's discovery productions have been "protracted . . . tactically," Mot. 2, is farfetched. The government has regularly apprised the Court of its progress in producing the vast quantity of discovery in this complex fraud case and the Court is well aware of the efforts the government has made in that regard. The Motion's "suggestion" that the government is delaying discovery for tactical advantage is entirely unsupported, and in fact ignores the government's repeated accommodations of defense requests to undertake the time-consuming reprocessing of large discovery productions from an industry-standard production format to a different format requested by the defense. Given the vast quantity of discovery in a case that implicates all of Aventura's business over

---

months," Mot. 6. But the defendant is not in jail. He was subject to pretrial detention for two months and was released on January 6, 2020.

[5] The only cases in this Circuit holding pretrial bail restrictions to violate due process have involved the bail provisions of the Adam Walsh Act, which district courts have found to deny due process because they are imposed by statute across the board, without judicial discretion or an opportunity for adversarial testing. See, e.g., United States v. Polouizzi, 697 F. Supp. 2d 381, 394 (E.D.N.Y. 2010) (holding that mandatory electronic monitoring requirement of Adam Walsh Act denied due process to pretrial defendants); United States v. Arzberger, 592 F. Supp. 2d 590, 601 (S.D.N.Y. 2008) (same).

a period of more than ten years, and the government's repeated efforts to accommodate the defense's requests regarding the format of discovery, the suggestion that the government has tactically delayed its discovery productions is incorrect and unwarranted.

IV. Conclusion

For the reasons set forth above, the government respectfully submits that the Court should reject the defendant's motion to modify the conditions of his release and grant the government's cross-motion to reimpose the bond conditions that were in place before September 22, 2020.

Respectfully submitted,

JACQUELYN M. KASULIS
Acting United States Attorney

By: _____

Ian C. Richardson
Alexander F. Mindlin
Kayla C. Bensing
Assistant U.S. Attorneys
(718) 254-7000