EXHIBIT B

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

```
------------------------------X  Docket#
UNITED STATES OF AMERICA,      : 19-cr-00582-DRH-ARL-1
                               :
                               :
    - versus -                 : U.S. Courthouse
                               : Central Islip, New York
                               :
JACK CABASSO,                  : September 22, 2020
              Defendant        : 12:20 PM
------------------------------X
```

TRANSCRIPT OF CRIMINAL CAUSE FOR PROCEEDING
BEFORE THE HONORABLE ARLENE R. LINDSAY
UNITED STATES MAGISTRATE JUDGE

**A P P E A R A N C E S:**
**(VIA VIDEO/AUDIO)**

**For the Government:**      **Seth D. DuCharme, Esq.**
                            Acting U.S. Attorney


                    BY:     **Ian Richardson, Esq.**
                            **Alexander Mindlin, Esq.**
                            **Kayla Bensing, Esq.**
                            Assistant U.S. Attorney
                            100 Federal Plaza
                            Central Islip, NY 11722


**For the Defendant:**       **Albert Y. Dayan, Esq.**
                            Law Office of Albert Y. Dayan
                            80-02 Kew Gardens Road
                            Suite 902
                            Kew Gardens, NY 11415




**Transcription Service:**    **Transcriptions Plus II, Inc.**
                            61 Beatrice Avenue
                            West Islip, New York 11795
                            rl.transcriptions2@gmail.com

Proceedings recorded by electronic sound-recording,
transcript produced by transcription service

Proceedings

1          THE COURT:  Good afternoon, this is Judge

2   Lindsay and can I just confirm who is on the phone

3   please?

4          MR. RICHARDSON:  Good afternoon, your Honor.

5   It's Ian Richardson, Alexander Mindlin and Kayla Bensing

6   for the United States.

7          THE COURT:  Okay.

8          MR. DAYAN:  Good afternoon, your Honor.

9   Albert --

10          PRETRIAL SERVICES:  Good afternoon --

11          MR. DAYAN:  sorry, sorry, go ahead.

12          PRETRIAL SERVICES:  Good afternoon, your Honor.

13   Officer Ramel Moore for pretrial services.

14          THE COURT:  Okay.

15          MR. DAYAN:  Yes, For Mr. Cabasso, Albert Dayan.

16          Good afternoon, Judge.

17          THE COURT:  Yes, good afternoon.

18          Now Mr. Dayan, am I correct that your client

19   has consented to proceed this way by phone conference in

20   order to address the application to modify the conditions

21   of bail?

22          MR. DAYAN:  Yes, thank you for asking, he is.

23          THE COURT:  Okay.  And I take it he's on the

24   phone right now; is that right?

25          THE DEFENDANT:  Yes, your Honor.

1          MR. DAYAN:  He is.

2          THE COURT:  Okay.  All right.  So the reason I

3   asked for the conference is when I reviewed the

4   application, I don't have an objection specifically to

5   allowing Mr. Cabasso to set up this business he described

6   but I am concerned since it is a business that's not

7   unlike the one that he is charged with using in violation

8   of the law, that there be some provision for either

9   pretrial services or -- actually, it would have to be

10  pretrial services, to at least randomly check to ensure

11  that the conduct that's charged in the indictment is not

12  being engaged in in the new company.

13          So I throw that out to counsel to come up with

14  something that would address the Court's concerns.  Maybe

15  it's just pretrial services monitoring but I don't know

16  that pretrial services has the wherewithal to do so.  So

17  can I get some response on that proposal?

18          MR. DAYAN:  Yes.  You want to proceed because I

19  think that the 14-day reporting to the government through

20  pretrial alleviates that concern, Judge because they will

21  have the opportunity to know who he is dealing with and

22  they'll have the opportunity to contact the clientele and

23  ask what type of business.

24          And on top of that, if they need without any

25  search warrant or without any court authorization, ask

Proceedings

1  Mr. Cabasso to produce the documents in connection to his

2  association with the clients in the last 14 days of which

3  in which he is reporting.

4          THE COURT:  All right.  So that wasn't clear to

5  me.  So as you're describing, every 14 days he is to

6  report to the government the new business contract that

7  he's entered into or the new business that he's operating

8  -- that he's engaged in and then they can request

9  documents as they see fit.  Is that what you're saying?

10          MR. DAYAN:  That was my understanding that upon

11 the request of the government to confirm that the

12 business is ran in accordance -- you know, legitimately,

13 the government has the right to basically inspect.

14          THE COURT:  Okay.  But at the outset, it's the

15 defendant's responsibility to keep the government

16 apprised of his business contracts or, you know, business

17 -- I'm not sure how it's been defined but new business

18 for the company; is that right?

19          MR. DAYAN:  Correct.  So he produces the list -

20 - he produces the list and then upon an audit by the

21 government if they so wish, they can request for more

22 than the list.

23          THE COURT:  Okay.  So let's call it a -- is it

24 fair to call it a client list, is that what we're saying?

25 Would that be a right --

Proceedings

1          MR. DAYAN:  It --

2          THE COURT:  -- (indiscernible).

3          MR. RICHARDSON:  I think it's a contact --

4   sorry, your Honor.  This is Ian Richardson for the

5   government.

6          THE COURT:  No, go ahead.  I want to -- yes.

7          MR. RICHARDSON:  What I think we envision it as

8   a contact list, so one of the concerns we had in addition

9   to the ones your Honor outlined was the possibility of

10  tampering with witnesses who might have information about

11  the case, just given the nature of the allegations.

12         THE COURT:  Right.  I'm aware of that.

13         MR. RICHARDSON:  And the way we -- right.  The

14  way we had sort of -- the compromise solution we reached

15  with Mr. Dayan on that point was that if every 14 days

16  Mr. Cabasso was submitting a list of all people and

17  (indiscernible) he had been in contact with, that would

18  at least give us and pretrial the option of, you know,

19  conducting spot checks, contacting those folks and just

20  saying, you know, has he been in contact with so-and-so,

21  what did you talk about, things like that.

22         THE COURT:  Okay.  Let me --

23         MR. RICHARDSON:  And then --

24         THE COURT:  Mr. Richardson, let me just be

25  clear about something.  When you say "all contact", it's

1  all business contact and/or contact with the company that

2  is named in the indictment or is it all contact?  I mean,

3  obviously we don't --

4          MR. RICHARDSON:  I --

5          THE COURT:  -- want to hear --

6          MR. RICHARDSON:  I think it's all contact in

7  connection with the new business.

8          THE COURT:  With the business.

9          MR. RICHARDSON:  That would be both vendors and

10 it would also be potential clients and it would be

11 potential business partnerships including the manager.

12         THE COURT:  Clients, partnerships -- and that's

13 why I wanted this conference to make sure that

14 everybody's clear and especially the defendant as to what

15 his obligations are, so that there isn't a dispute later

16 on as to what if anything was required because to me,

17 when I looked at the submission, it wasn't perfectly

18 clear to me what had been agreed to.

19         So -- okay, I'm okay with that if that actually

20 clarifies the obligation of Mr. Cabasso.  Mr. Cabasso, I

21 take it maybe you already understood it but the Court

22 didn't, that to the extent that you're going to be

23 operating this new enterprise, that you have an

24 obligation to keep the government informed in a listing,

25 you could do it through counsel or directly, that will be

Proceedings

1  worked out with you and your lawyer but every 14 days, a

2  comprehensive list of any individuals and persons that

3  you might have contacted as a vendor or client of the new

4  company or any contact with the company which is named in

5  the indictment and the individuals who are associated

6  with that business.

7          And pretty much to the extent that you're in

8  touch with individuals with respect to the operations of

9  the new business, the operations and I'm not talking

10 about saying hello to somebody -- I should add this --

11 operations of your new business, even if you just

12 contacting them to touch base to see if they need

13 anything, that would be a contact that you would have to

14 report.

15          And then if the government wishes to follow-up

16 on something to inquire further, they would communicate

17 that interest to your attorney who would then provide

18 some response.  Does that fairly state what the agreement

19 between the government and defense counsel?

20          MR. DAYAN:  It does on --

21          MR. RICHARDSON:  It does, your Honor.

22          MR. DAYAN:  It does, Judge.

23          THE COURT:  Okay.  So Mr. Cabasso, did you

24 understand that and if you do, then I will agree to the

25 modification that's now on the record and I think it's

Proceedings

1  very clear what you're required to do.  Do you understand

2  what I have just outlined for you?

3          THE DEFENDANT:  Yes, your Honor.

4          THE COURT:  Okay.  All right.  Then --

5          PRETRIAL SERVICES:  Your Honor?

6          THE COURT:  Go ahead.

7          PRETRIAL SERVICES:  Your Honor, this is Officer

8  Moore from pretrial services.  I just wanted to address

9  one matter in defense counsel's application regarding the

10 time frame that he's requesting that Mr. Cabasso be

11 allowed out to go to work (audio interference).

12         THE COURT:  Uh-hum.

13         PRETRIAL SERVICES:  Is your Honor adopting that

14 modification?

15         THE COURT:  I don't remember, what is the time

16 frame?  I don't have the request directly in front of me.

17 So what was the time frame and do you have an opinion

18 about it?  So let me know.

19         PRETRIAL SERVICES:  So counsel can correct me

20 if I am wrong but he's requesting that Mr. Cabasso be

21 allowed out from 8 a.m. to 6 p.m. on a daily basis for

22 him to operate the business.  We would just ask that it

23 be left at our discretion to give him a (audio

24 interference)  schedule since he's under home detention.

25         THE COURT:  I'm okay with that.  I think

Proceedings

1  presumptively 8 to 6 is reasonable but to the extent that

2  he needs more time or you feel that -- or pretrial

3  services feels that that should require some

4  modification, I am going to give you the discretion to do

5  that but I think presumptively 8 to 6 is a very

6  reasonable request in terms of the operations of the

7  business.

8           But Mr. Moore, as pretrial services officer,

9  I'm going to allow the discretion to modify as you deem

10 necessary but with the idea that the Court thinks that

11 this is not an unreasonable request.

12          PRETRIAL SERVICES:  Okay, understood.

13          MR. DAYAN:  So if pretrial -- and thank you so

14 much, Officer, for bringing this to my attention.  So

15 sometimes because Mr. Cabasso is in the service industry,

16 somebody -- someone may have an emergency, we would

17 notify pretrial services that on a particular date, we

18 are going to be at a particular place.  For example,

19 designating and addressing of that emergency, so it would

20 be up to the pretrial officer to approve that based upon

21 the --

22          THE COURT:  Yes.

23          MR. DAYAN:  -- adequate notice.

24          THE COURT:  Right.  I absolutely concur with

25 that.  I mean, Mr. Moore is -- and I believe you're the

Proceedings

1   one who is responsible for supervising it and he and

2   others, but they will have that kind of discretion.  So

3   to the extent there is an issue, please touch base with

4   pretrial services because I'm deferring to them on that

5   matter.

6          PRETRIAL SERVICES:  All right.

7          THE COURT:  Anything else?

8          MR. DAYAN:  Thank you so much.

9          PRETRIAL SERVICES:  Yes, one moment, your

10  Honor, I would just like to make clear that he's only

11  being approved from 8 to 6 to go to and from work.

12         THE COURT:  Yes.

13         PRETRIAL SERVICES:  And no other destination.

14         THE COURT:  That's it.  Right now, I mean he

15  does have, you know, permission to do attorney visits.

16  As you know, they're the usual, the attorney visits,

17  court visits, medical stuff, all of which has to be

18  approved by pretrial services in the first instance

19  before it happens, okay?

20         PRETRIAL SERVICES:  Yes, that part is

21  understood.  I just wanted to clarify the 8 to 6 time

22  frame.

23         THE COURT:  Right.  The 8 to 6 is for work.

24         PRETRIAL SERVICES:  Thank you.

25         MR. RICHARDSON:  Your Honor, Ian Richardson for

Proceedings

1    the government.

2            THE COURT:  All right.

3            MR. RICHARDSON:  Just two small matters, I just

4    wanted to clarify.  It's my understanding generally when

5    defendants are permitted to go to a location for work

6    that pretrial has the option for randomized unannounced

7    visits to verify that they are doing what they said they

8    were going to do and that that is a condition as well.

9            THE COURT:  Yes.

10           MR. RICHARDSON:  Okay.

11           THE COURT:  That's standard and if there's any

12   question about it, I want to make clear that that is

13   absolutely permitted; random visits to the house or the

14   place of business.

15           MR. RICHARDSON:  And then the second issue,

16   just on the contact lists, in addition to the names of

17   the people, I think also the contact information for

18   those people, so if it's a phone call, the phone number,

19   and email, the email address, just so that if we decide

20   to follow-up, we could reach out to them ourselves

21   without having to go through Mr. Dayan for that

22   information.

23           THE COURT:  Mr. Dayan, is that understood or

24   any objection to that?

25           MR. DAYAN:  No, no objection.

1          THE COURT:  Okay.  That application is also

2    included -- granted and included as part of the

3    conditions of release.

4          All right.  I think that's it unless someone

5    else has something else?

6          MR. RICHARDSON:  Nothing further, your Honor.

7          MR. DAYAN:  Judge, I just want to make sure,

8    Judge, if you don't mind.  That last request by the

9    government, I just want to make sure I understood it

10   because can Mr. Ian (sic) repeat that what I just

11   consented to?

12         THE COURT:  Yes, go ahead.

13         MR. DAYAN:  I just wanted to make sure that I

14   understood him clearly.

15         MR. RICHARDSON:  Yes.  Absolutely.

16         THE COURT:  Go ahead.

17         MR. RICHARDSON:  When Mr. Cabasso provides to

18   you and then you eventually provide to the government,

19   the contact list of the people that he's in contact with

20   in connection with the operation of his new business,

21   that contact list will not just include names, it will

22   also include the method of -- the contact information

23   itself.  So if it's a phone call, a phone number.  If

24   it's an email address, an email address.

25         MR. DAYAN:  That's fine, yes, yes.

1          THE COURT:  Okay.  Anything else?

2          MR. RICHARDSON:  That's it from the government,

3    your Honor.

4          MR. DAYAN:  That's it, Judge.  Thank you so

5    much.  Nothing for the defense.

6          THE COURT:  All right.  Everyone have a --

7          MR. DAYAN:  Thank you so much, Judge.

8          THE COURT:  Yes, of course.  Have a good day

9    everyone and stay safe.

10          MR. RICHARDSON:  Thank you, your Honor.

11          MR. DAYAN:  Thank you so much.  We look forward

12    to being back in your courtroom, Judge.

13          THE COURT:  I'm not so sure I'm looking forward

14    to it but -- no, I'm joking but of course.  Right now, we

15    don't know everybody's going back but I suspect we'll see

16    if they resurge or not.  Everybody's anticipating a surge

17    and that might throw everything into some kind of

18    (indiscernible).  Anyway, who knows?  Yes but in the

19    meantime, everybody stay healthy and have a good day.

20          MR. DAYAN:  Thank you so much.

21          THE COURT:  All right.  Bye-bye.

22                    (Matter Concluded)

23                        -o0o-

24

          **C   E   R   T   I   F   I   C   A   T   E**

I, LINDA FERRARA, hereby certify that the foregoing transcript of the said proceedings is a true and accurate transcript from the electronic sound-recording of the proceedings reduced to typewriting in the above-entitled matter.

I FURTHER CERTIFY that I am not a relative or employee or attorney or counsel of any of the parties, nor a relative or employee of such attorney or counsel, or financially interested directly or indirectly in this action.

IN WITNESS WHEREOF, I hereunto set my hand this **23rd** day of **July** 2021.

*Linda Ferrara*
Linda Ferrara

AAERT CET 656
Transcriptions Plus II, Inc.