

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

271 Cadman Plaza East
Brooklyn, New York 11201

BGK:CSK
F. #2018R01047

June 20, 2024

By ECF

The Honorable Joan M. Azrack
United States District Judge
Eastern District of New York
100 Federal Plaza
Central Islip, New York 11722

      Re:    United States v. Cabasso, et. al.
                Criminal Action No. 19-582 (JMA)

Dear Judge Azrack:

      The government respectfully writes the Court in response to the June 7, 2024 letter filed on behalf of third-party petitioners Dr. Eric Weinstein and his entity, I Shine Florida Yachting, LLC (hereinafter "Third-Party Petitioners") (DE No. 362). For the reasons set forth below Third-Party Petitioners' requests should be denied in their entirety as unsubstantiated, unsupported by legal authority, and contrary to law. In addition, based on the enclosed exhibits and appendix, the government respectfully moves pursuant to Fed. R. Crim. P. 32.2(d)(7) and Rule G(7) of the Supplemental Rules for Admiralty or Maritime Claim and Asset Forfeiture Actions (the "Supplemental Rules") for interlocutory sale of the subject Yacht so that its value does not continue to dissipate and so that the net proceeds from its sale are available pending final resolution of this criminal case and the ancillary proceeding. A proposed Order for Interlocutory Sale is included for the Court's convenience.[1]

      Factual Background

      The subject property referenced in the Third-Party Petitioners' letter concerns a yacht, specifically an approximately seventy-foot luxury recreational yacht named "Tranquilo," registered in the name of the Aventura Group, Inc, an entity owned and controlled by the defendant Frances Cabasso, bearing hull identification number XAC68S47C606, and Coast Guard Number 1194245, which was seized on November 7, 2019 pursuant to a court-authorized seizure warrant ("the Yacht").

---

[1] In addition, any third-party claim by Eric Weinstein should be dismissed because he lacks standing and the sole Third-Party Petitioner with standing to pursue a 50% claim to the Yacht is I Shine Florida Yachting, LLC.

Since the Yacht's seizure on or about November 7, 2019, it has been in the custody of the USMS pursuant Fed. R. Crim. P. Rules 32.2 and 41, 18 U.S.C. §§ 981(b), 982(b), and 21 U.S.C. § 853. The Yacht was included as one of multiple specific forfeitable assets in the Indictment against defendants Jack Cabasso, Frances Cabasso, and their entity, Aventura Technologies, Inc., pursuant to 18 U.S.C. § 981(a)(1)(C), 982(a)(1) and (2), 982(b), 21 U.S.C. § 853(p), and 28 U.S.C. § 2461(c). (Indictment at DE No. 55 at ¶¶ 41-46, 41(m), 43(m) and 45(m)).

Following the defendants Jack Cabasso, Frances Cabasso, and Aventura Technologies, Inc., respective pleas to Count One (charging a violation of 18 U.S.C. § 1349), Count Two (charging a violation of 18 U.S.C. § 1349), and Counts One, Two and Three (charging violations of 18 U.S.C. §§ 1349 and 545) of the Indictment, and pursuant to each of their plea agreements with the government, Preliminary Orders of Forfeiture were entered by the Court on January 12, 2024 and April 2, 2024 against multiple specific assets of the defendants, including the Yacht, pursuant to 18 U.S.C. §§ 981(a)(1)(C), 982, 21 U.S.C. § 853(p), and 28 U.S.C. § 2461(c). (DE Nos. 324, 325, 342 at p. 2, paragraph (m)) (collectively "the Preliminary Orders of Forfeiture").

On or about January 17, 2024, a verified claim to the Yacht was filed with the Court by Eric Weinstein and I Shine Florida Yachting, LLC ("the Third-Party Petitioners") (DE 327, 327-1). The Third-Party Petitioners assert only a fifty percent (50%) ownership interest in the Yacht. (DE No. 327-1 at ¶ 2).[2]

On or about January 22, 2024, pursuant to Fed. R. Crim. P. 32.2(b)(6)(A) and 21 U.S.C. § 853(n)(1), the government commenced publication of the Preliminary Orders of Forfeiture which was completed on or about February 20, 2024 (Certificate of Publication at DE No. 346). Apart from the Third-Party Petitioners, no other person or entity has filed with the Court any claim to the Yacht, and the time to do so, under 21 U.S.C. § 853 (n) has expired.

On January 15, 2021, before entry of the Preliminary Orders of Forfeiture, the government filed a motion for interlocutory sale of the Yacht on the grounds that, inter alia, the USMS maintenance and storage costs related to the Yacht were, at that time, approximately $56,625.85 and continued to accrue. (DE Nos. 167, 168, 175). Defendant Frances Cabasso

---

[2] Specifically, as attested to by Eric Weinstein: "Aventura Group Inc. is fifty percent owned by I Shine Florida Yachting, LLC. . ." and ". . . I Shine Florida Yachting, LLC is entirely owned and controlled by Claimant Eric Weinstein." (DE 327-1 at ¶ 2(d) and (c)). The Second Circuit has expressly held in United States v. Swartz Family Trust, 67 F.4th 505, 516 (2d Cir. 2023), that a member of a limited liability company (under Delaware, New York or Florida law), has no legal interest in an asset that belongs to the limited liability company and therefor lacks standing to pursue any claim to such an asset. See United States v. Pilty, 2023 WL 8891398 at * 6 (E.D.N.Y. Dec. 26, 2023) (Seybert, J.)(following Swartz Family Tr., and dismissing third-party petition on the ground that a trustee, like shareholders of a corporation or a member of a limited liability company lacks standing). Therefore, as a matter of law, only I Shine Florida Yachting, LLC can assert a viable 50% ownership interest in the Yacht and any claim by Eric Weinstein, individually, must be dismissed for lack of standing. See Fed. R. Crim. P. 32.2(c)(1)(A) and Fed. R. Civ. P. 12(b)(6).

opposed the government's motion, although the Third-Party Petitioners appeared to agree that an interlocutory sale was warranted, contending that the Yacht "is quickly depreciating and deteriorating." (DE No. 163 at p. 1). By Memorandum and Order, dated April 6, 2021, the Court denied the government motion without prejudice and with permission to renew. The Court noted that in any renewal motion, the government would need to provide a marine appraisal for the Yacht and credentials of the preparer of it. (DE No. 187 at pp. 6-7).

In renewing the Government's Motion for Interlocutory Sale, the government has provided the enclosed Declaration of Cynthia Bridges, Property Management Specialist with the United States Marshals Service ("USMS Decl.") (attached hereto as Exhibit A), dated June 18, 2024; and the enclosed redacted April 26, 2024 marine survey/appraisal of the Yacht, accompanied by the resume of the inspection appraiser Captain Bill Weyant, AMS ("Marine Survey Appraisal for the Yacht") (collectively attached hereto as Exhibit B).[3]

As set forth in the USMS Decl. (Exhibit A), the relocation, repairs, maintenance, storage, electric and other costs associated with the Yacht have from the time of its seizure through June 2024 total $227,979.96 and continue to accrue. USMS Decl. (Exhibit A) at ¶ 34. The USMS Decl. sets forth with specifics and explanations, all the costs and expenses. Id. at ¶¶ 3-33. Moreover, as set forth in a recent Marine Survey Appraisal, conducted by an accredited marine surveyor/appraiser with over thirty years of experience and certifications with boats (Exhibit B), the Yacht currently has an estimated fair market value of $345,000. Such expenses and costs of maintaining the Yacht are now approximately 66% of its fair market value. Exhibit A at ¶ 35.

Indeed, as the USMS Decl. expressly demonstrates the Yacht is an inherently depreciating asset. See Exhibit A at ¶ 8 (attesting to a June 2020 fair market value appraisal of $625,000); ¶ 16 (attesting to a June 2021 fair market value marine survey appraisal of $600,000); ¶ 19 (attesting to a March 2022 fair market value marine survey appraisal of $345,000); ¶ 25 (attesting to a May 2023 fair market value marine survey appraisal of $300,000); and ¶ 26 (attesting to an April 2024 fair market value marine survey appraisal of $345,000).

Ultimately, because of the United States' and Third-Party Petitioners' 50/50 ownership in the Yacht, it is the government's intention for 50% of the net proceeds from the Yacht to be forfeited to the government and 50% of the net proceeds from the Yacht to be remitted to the Third-Party Petitioner I Shine Florida Yachting, LLC.

I. <u>Federal Laws that Govern the Disposition of Forfeited Assets Preclude the Relief the Third-Party Petitioners Seek</u>

Third-Party Petitioners request that this Court intervene and accede to their arguments that: (1) they should not be responsible for any of the USMS costs and fees relating to the maintenance of the Yacht; and (2) the USMS maintenance costs and fees are "excessive and

---

[3] Exhibit B has been redacted to protect the personal privacy and identification of non-parties and/or for law enforcement purposes pursuant to 28 C.F.R. § 16.81, 5 U.S.C. § 552 (b)(4), (6), (7) and/or (8).

exorbitant," are wholly unsubstantiated and should be denied.[4] Significantly, as set forth below, the Third-Party Petitioners general allegations are unsubstantiate, unsupported by legal authority, and contrary to law. Therefore, Third-Party Petitioners' requests of this Court should be denied in their entirety.

Title 21 U.S.C. § 881(e) expressly provides, in relevant part:

> (e) <u>Disposition of forfeited property</u>
>
> (2)(A) The proceeds from any sale under subparagraph (B) of paragraph (1)[5] and any moneys forfeited under this subchapter shall be used to pay—
>
>> (i) all property expenses of the proceedings for forfeiture and sale including expenses of seizure, maintenance of custody, advertising, and court costs; …

Courts have held that where a forfeited asset is liquidated and a portion of the asset is forfeited it is the net proceeds of the asset's current fair market value that must be distributed. <u>See e.g.</u>, <u>United States v. Martinez</u>, 228 F.3d 587, 591(5th Cir. 2000) (holding that spouse of defendant's half interest in forfeitable land should be based on current value of the land and not the value of land when purchased); <u>United States v. Morales</u>, 2014 WL 3974557 * 2 (M.D. Fla 2014) (holding that only *net* proceeds from the sale of piece of real property after taxes paid should be divided between government and defendant's wife) (emphasis added). Therefore, Third-Party Petitioners' request that any of the USMS costs and fees should somehow be "waived" as to them is contrary to federal statute.

Moreover, the USMS has broad discretion when exercising their authority to maintain and secure assets subject to forfeiture that are in their custody, including vessels like the Yacht. <u>See e.g</u>, 28 U.S.C. § 1921(a)(1) (D) and (E) ("The United States marshals shall routinely collect, and a court may tax as costs, fees for the following:. . . (D) The preparation of any notice of sale, proclamation in admiralty, or other public notice or bill of sale; and (E) The keeping of attached property (including boats, vessels, or other property attached or libeled), actual expenses incurred, such as storage, moving, boat hire, or other special transportation, watchmen's or keepers' fees, insurance, and an hourly rate, including overtime, for each deputy marshal required

---

[4] For example, without any substantiation, Third-Party Petitioners have represented in other court filings: "Dr. [Eric] Weinstein estimates that more than $165,000 worth of repair work was needed when the boat was seized in 2019." (DE No. 163 at p. 2). However, as attested to in the USMS Decl. (Exhibit A), the repair costs the USMS incurred for the Yacht since its seizure have only been approximately $44,767.30. <u>See</u> Exhibit A at ¶¶ 3, 12, 13, 19-25, and 30.

[5] Subparagraph (B) of paragraph (1) states:

"Whenever property is civilly or criminally forfeited under this subchapter the Attorney General may--. . . . (B) . . . sell by public sale or any other commercially feasible means, any forfeited property which is not required to be destroyed by law and which is not harmful to the public."

for special services, such as guarding, inventorying, and moving."); 28 C.F.R. § 0.111(i) ("The Director of the United States Marshals Service shall direct and supervise all activities of the U.S. Marshals Service including: . . .Maintenance of custody, management control, and disposition of property and money seized or forfeited pursuant to any law enforced or administered by the Department of Justice, when the property is seized by the USMS or delivered to the USMS in accordance with regulations"). Notably, the language used in all the afore cited statutes and regulations includes the word "shall," therefore, notwithstanding Third-Party Petitioners' position, the law requires the USMS costs and fees associated with seized and potentially forfeited assets to be deduced before any net proceeds from an asset are forfeited or otherwise distributed.

Further, USMS expenses in forfeiture are analogous to its expenses in admiralty which is not surprising since federal forfeiture laws have their genesis in admiralty. "Expenses furnished *in custodia legis*[6] are allowed administrative priority because they are necessary to preserve a *res* that is the subject of pending judicial proceedings." Oil Shipping (Bunkering) B.V. v. Sommez Denizcilik Ve Ticaret A.S., 10 F.3d Cir. 176, 182 (3rd Cir. 1993) (citations omitted). See also, United States v. D.K.G. Appaloosa, Inc., 630 F. Supp. 1540, 1574 (E.D.Tx. 1986) (a forfeiture case involving a vessel holding "expenses of justice enjoy special favor in admiralty law, since they receive priority over all other claims . . .") (citation omitted). It cannot be disputed, that the Yacht is an inherently depreciating asset that, like any boat, needs to be maintained and stored. Accordingly, Third-Party Petitioners' request that these expenses and costs be "waived" as to them is unsupported by legal authority and contrary to law.

Lastly, the government respectfully submits that any request that this Court accede to Third-Party Petitioners' requests is not available. Specifically, the relevant provision of the U.S. Department of Justice Policy Manual, expressly provides that a third-party claimant's interest in a specific asset subject to forfeiture can only be paid after the government's costs have been recovered from a forfeiture sale. See Title 9-115.300 of the United States Department of Justice Policy Manual (March 2024).[7] Therefore, Third-Party Petitioners' challenge to the USMS costs and expenses regarding the Yacht as "excessive and exorbitant" and request that such costs and

---

[6] A Latin phrase that means "in the custody of the law."

[7] Title 9-115.300 - Disposition of Forfeited Property states:

In addition, orders of forfeiture should specifically address any third party claims against the forfeited property that are recognized by the United States. *If the interests of the claimant are to be satisfied in whole or in part by payments from the proceeds of a sale of property by the United States Marshals Service or Treasury, the proposed forfeiture order should provide specific guidance concerning such payments and, where possible, specify that such claims shall be paid only after the costs of the United States are recovered, and shall be paid only up to the amount realized from the proceeds of the forfeited property*. The Attorney General has been given the authority to dispose of forfeited property "by sale or any other commercially feasible means" without subsequent court approval. See 21 U.S.C. §§ 881(e), 853(h), and 18 U.S.C. § 1963(f). This is generally called a "forfeiture sale" of the property. Forfeiture sales do not require judicial confirmation pursuant to 28 U.S.C. § 2001. (emphasis added).

fees be somehow "waived" as to them, should be denied in their entirety as unsubstantiated, unsupported by legal authority, and contrary to law.

 II. An Interlocutory Sale of the Yacht is Warranted

Pursuant to Fed. R. Crim. P. 32.2(d)(7) and Rule G(7) of the Supplemental Rules for Admiralty or Maritime Claim and Asset Forfeiture Actions (the "Supplemental Rules"), and based on Exhibits A and B, the government hereby re-news its motion for an interlocutory sale order for the Yacht. The government respectfully incorporates by reference the legal arguments and case law cited in its memorandum of law and reply memorandum of law filed in support of its original motion for interlocutory sale. (DE 107-2 and 175).

In addition, a recent and comprehensive decision from the United States District Court for the Southern District of New York, is instructive. On June 11, 2024, in a civil forfeiture case against a mega yacht owned by an International Emergency Economic Powers Act, 50 U.S.C. § 1701, et seq. sanctioned Russian oligarch, United v. the M/Y Amadea a Motor Yacht, et. al., 23-CV-09394 (S.D.N.Y.) (DEH), U.S. District Court Judge Dale E. Ho issued an Order and Opinion in connection with a motion for interlocutory sale. (A copy of the Amadea June 11, 2024 Order and Opinion is attached hereto as Appendix 1). In Amadea, although the court ultimately denied the government's motion for interlocutory sale, which was opposed by the claimant (and, notably, not the current posture of the Yacht at issue here), the court had occasion to discuss the meaning of the terms in Supplemental Rule G(7)(b)(i)(B) ("On motion by a party. . ., the court may order all the property sold if: . . . "the expenses of keeping the property is excessive or is disproportioned to its fair market value") in depth. Ultimately, the Amadea court expressly held: "The Court therefore agrees with the Government that the Rule creates a disjunctive test: a court may exercise its discretion to order sale when the expense of maintaining the property is (1) disproportionate to the property's fair market value, or (2) excessive." Amadea, slip op. at p. 5 (Appendix 1).

Applying this Supplemental Rule G(7)(b)(i)(B) test to the Yacht at issue in this case, the USMS Decl. demonstrates that the total expenses and costs from the time of the Yacht's seizure in November 2019 through June 2024 are $227,979.96 and continue to accrue. See Exhibit A at ¶ 34. The USMS Decl. specifically sets forth with explanations all the costs and expenses incurred to date. Id. at ¶¶ 3-34. Moreover, the USMS Decl. substantiates the inherent depreciating nature of the Yacht. See Exhibit A at ¶ 8 (attesting to a June 2020 fair market value appraisal of $625,000); ¶ 16 (attesting to a June 2021 fair market value marine survey appraisal of $600,000); ¶ 19 (attesting to a March 2022 fair market value marine survey appraisal of $345,000); ¶ 25 (attesting to a May 2023 fair market value marine survey appraisal of $300,000); and ¶ 26 (attesting to an April 2024 fair market value marine survey appraisal of $345,000). In addition, Exhibit B shows that based on a recent marine survey inspection/appraisal of the Yacht, by an experienced and accredited marine appraiser, the Yacht has an estimate fair market value of $345,000. See Exhibit B at pp. 2 and 30. In light of all this information, the expenses of maintaining the inherently depreciating Yacht have become disproportionate to its fair market value. That is, the expenses and costs of maintaining the Yacht are now approximately 66% of its fair market value. See Exhibit A at ¶ 35.

Therefore, the requirements for an order of interlocutory sale under Supplemental Rule G(7)(b)(i)(B) have been met. See United States v. Furando, 40 F.4th 567, 580-81 (7th Cir. 2022) (affirming district court's grant of government's motion for interlocutory sale order for real property after defendants guilty pleas where property was deteriorating, third-party claimants agreed to the interlocutory sale and third-party claimant's §853(n) petition pending); United States v. Howard, 2024 WL 1117001 (E.D.N.C. March 14, 2024) (granting government's motion for interlocutory sale and ordering interlocutory sale of depreciating vehicle over defendant's objection and directing net proceeds will consist of sale price, and not purchase price, after all expenses incurred by seizing agency and all 853(n) third-party claims and defenses to be applied to net proceeds). Accordingly, an interlocutory sale of the Yacht is warranted under Fed. R. Crim. P. 32.2(b)(7) and Supplemental Rule G(7)(b)(i)(B) so that the net proceeds from its sale can be held pending resolution of the criminal case and these ancillary proceedings.

The government respectfully submits that the expenses of keeping the inherently depreciating Yacht (currently $227,979.96 and accruing) are disproportionate to its estimated fair market value ($345,000). Therefore, pursuant to Fed. R. Crim. P. 32.2(b)(7) and Supplemental Rule G(7)(b)(1)(i)(B), an interlocutory sale of the Yacht is warranted. A proposed Order for Interlocutory Sale of the Yacht is attached hereto for the Court's convenience.

Conclusion

For the reasons set forth above, the government respectfully submits that Third-Party Petitioners' challenges to the USMS costs and fees as "excessive and exorbitant" and request to have the USMS costs and fees somehow "waived" as to them should be denied in their entirety as unsubstantiated, unsupported by legal authority, and contrary to the federal laws governing the disposition of forfeited assets. Further, the government respectfully renews its motion for interlocutory sale of the Yacht pursuant to Fed. R. Crim. P. 32.2(d)(7) and Supplemental Rule G(7)(b)(i)(B) because the expenses of maintain the Yacht have become disproportionate to its fair market value and so that the net proceeds from its sale are available pending final resolution of this criminal case and the ancillary proceeding. A proposed Order of Interlocutory Sale is attached.[8]

Respectfully submitted,

BREON PEACE
United States Attorney

By: /s/ Claire S. Kedeshian

Claire S. Kedeshian
Assistant U.S. Attorney
(718) 254-6051

Enclosures: Exhibits A, B, and Proposed Order for Interlocutory Sale; Appendix 1
cc: Duncan Levin, Esq. (counsel to Third-Party Petitioners)(via ECF)

---

[8] In addition, pursuant to Fed. R. Crim. P. 32.2 (c)(1)(A) and Fed. R. Civ. P. 12(b)(6), any third-party claim by Eric Weinstein, should be dismissed because he lacks standing and the sole Third-Party Petitioner with standing to pursue a 50% claim to the Yacht is I Shine Florida Yachting, LLC. See fn. 2, infra.